UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALAN TROY MEYERS, | Civil Action No.: 20-10988 |
| | Honorable Mark A. Goldsmith |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 18]**

Plaintiff Alan Troy Meyers appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 18, be **GRANTED**;
- Meyers' motion, ECF No. 15, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

A.  **Meyers' Background and Disability Applications**

Born in May 1966, Meyers was 50 years old at the time of his applications for disability benefits in March 2017. ECF No. 12-5, PageID.264, 266. Meyers has no past relevant work. ECF No. 12-2, PageID.79, 108. Meyers claimed to be disabled from depression, anxiety, panic attacks, bipolar disorder, learning disabilities, diabetes, high triglycerides, arthritis, bad knees/possible knee replacement, high blood pressure, and headaches due to possible pinched nerve. ECF No. 12-6, PageID.284.

After the Commissioner denied Meyers' disability application initially, an ALJ held a hearing and found him not disabled in a March 2019 written decision. ECF No. 12-2, PageID.70-81. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Meyers timely filed for judicial review. *Id.*, PageID.61-63; ECF No. 1.

B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id*. Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id*. If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id*. At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id*. The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[1] A severe impairment is one that "significantly limits the claimant's physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Meyers was not disabled. At the first step, she found that Meyers had not engaged in substantial gainful activity since his alleged February 2017 onset date. ECF No. 12-2, PageID.72. At the second step, the ALJ found that Meyers had these severe impairments: baker's cyst; medial meniscal tear; osteonecrosis of the right knee; degenerative joint disease of the knees; osteoarthritis of the bilateral knees; obesity; headaches; possible idiopathic trigeminal neuropathy; affective disorder; depressive disorder; anxiety disorder; bipolar II disorder; panic disorder; agoraphobia; and posttraumatic stress disorder. *Id*. The ALJ found that Meyers had hypertension, hyperlipidemia, diabetes, vitamin D deficiency, GERD, sinusitis, bilateral ulnar sensory neuropathy of the wrists, right sided neck abscess, left armpit abscess/hidradenitis suppurativa, and chronic kidney disease, but that these impairments were not severe. *Id*., PageID.72-73. She concluded that none of Meyers' impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.73.

Between the third and fourth steps, the ALJ found that Meyers had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) except

that:

> [he] can occasionally push and/or pull with the bilateral lower extremities, he can occasionally climb ramps and stairs, he can never climb ladders, ropes, scaffolds, he can occasionally balance, stoop, and crouch, he can never kneel or crawl, and he should avoid all exposure to hazards such as commercial driving, wet, slippery, or uneven surfaces, unguarded moving machinery, and unprotected heights.  [He] can understand, remember, and carry out simple oral instructions, and tasks which do not have any writing requirements nor do they involve the exchange of money, he can make judgments on simple work-related decisions, he can respond appropriately to occasional and superficial interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting, performing the same tasks, in the same manner and same place every day, which is free from fast pace or inflexible production requirements.

*Id*., PageID.75.  At step four, the ALJ found that Meyers had no past relevant work.  *Id*., PageID.80.  But at the final step, after considering Meyers' age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that he could perform jobs that existed in significant numbers in the national economy, including as a laundry folder and injection molding machine tender.  *Id*., PageID.80.  The ALJ thus concluded Meyers was not disabled.  *Id*.

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Relying heavily on his own subjective complaints, Meyers argues that the ALJ's decision is not supported by substantial evidence. ECF No. 15, PageID.880-889. Meyers' brief amounts to a request for the Court reweigh the evidence, which would be improper. *See Cutlip v. Sec. of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers

can go either way, without interference by the courts." *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013). Much of Meyers' arguments brush past the wide latitude enjoyed by ALJs, and he fails to show reversible error under well-established Social Security law.

Meyers also asserts that the ALJ "clearly failed" to give controlling weight to a treating source's opinion, thus constituting reversible error. ECF No. 15, PageID.885-887. The Court rejects Meyers' arguments and finds that the ALJ's decision should be affirmed.

**B.**

The ALJ found that Meyers' "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Meyers' statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent" and "the substantial evidence of record simply does not support the degree of limitation alleged." ECF No. 12-2, PageID.76-77. After making this finding, the ALJ had to consider the entire record. *Rogers*, 486 F.3d at 247. The regulations direct the ALJ to consider the claimant's daily activities; the claimants pain and other symptoms; the precipitating and aggravating factors; the claimant's medication, its effectiveness, and side-effects; the claimant's other treatment and any measures to relieve symptoms; and other relevant

factors about the claimant's functional limitations, pain, or other symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).  But the ALJ need not explicitly discuss each of those factors.  *Ausbrooks v. Astrue*, No. CIV.A. 12-12144, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013).

Contrary to Meyers' assertions, the ALJ considered the entire record and noted her obligation to do so under § 416.929 and SSR 16-3p.  ECF No. 12-2, PageID.75-79.

### 1.     Mental Impairments

Meyers does not cite specific objective evidence to counter the ALJ's decision about his mental impairments.  Instead, Meyers questions how "a man suffering from such severe anxiety, depression, PTSD and frequent panic attacks could non-the-less weather the requirements of gainful employment."  ECF No. 15, PageID.882-885.

The ALJ found that Meyers had moderate limitations in understanding remembering, or applying information; in interacting with others; and in concentrating, persisting, or maintaining pace.  ECF No. 12-2, PageID.74-75.  She found that Meyers had a mild limitation in adapting or managing oneself.  *Id.*, PageID.75.  The ALJ also noted that Meyers had undergone "formal mental health therapy since 2014." *Id.*, PageID.78.  During that period, Meyers reported that "he has close friends, he sees his friends

weekly, he has a good relationship with his family, he was well groomed, cooperative, friendly, oriented, had no delusion, hallucinations, or suicidal ideations, despite some alleged memory impairments." *Id.* The ALJ also noted that Meyers was "regularly and consistently observed to be 'stable,'" his medications were not adjusted often, nor was he hospitalized. *Id.*

Meyers psychiatric medical records from June 2017 to December 2018 provide more support for the ALJ's decision. ECF No. 12-9, PageID.602-663. Meyers reported that "his mood improved after increasing Seroquel," his depression was stable, and though his anxiety continued, it too was stable. *Id.*, PageID.602, 606, 612. The reports repeatedly state that Meyers' appearance was appropriate and he had adequate grooming and hygiene; he was cooperative, had good eye contact, and normal psychomotor activity; his speech was normal rate; his mood was euthymic; his thought process was goal oriented, organized, logical, and linear; his thought content had no abnormal content and was future oriented; and his insight/judgment, memory, attention, and language were all intact. *Id.*, PageIDD.604-605, 610-611, 616-617, 630-631; 636-637; 642-643, 654-655.

The ALJ also referenced Meyers' own statements to support her determination. *Id.* Meyers responded "well" to medication, and he reported

9

that the medications "helped 'a lot'" and "helped his anxiety, panic attacks and BAD." ECF No. 12-9, PageID.632, 634, 638. In October 2018, Meyers reported suffering from anxiety "from time to time" but that "therapy has been a 'savior' and has helped to a very significant degree." *Id.*, PageID.652. And though Meyer's reported having recent episodes of crying spells and panic attacks in December 2018, he attributed them to "his mother's recent diagnosis" and reported that he was "overall [ ] doing fairly well." *Id.*, PageID.658.

The ALJ also addressed the March 2019 opinion of Meyers' mental health clinician, John Steele, M.A., TLLP, CAADC. ECF No. 12-2, PageID.79. But the ALJ found that Steele's opinion that Meyers' had multiple marked limitations was not consistent with the objective medical evidence of record. *Id.* The ALJ highlighted that Meyers was "observed to have intact memory, normal mood and affect, be stable, was cooperative, and displayed periods of logical thought, linear thought, organized thought, no anxiety, no loss of interest, no memory loss, and no paranoia." *Id.*

### 2.   *Physical Impairments*

To challenge the ALJ's findings about his knee impairments, Meyers again cites no evidence and simply argues, "how exactly is someone who is admittedly suffering from a severely arthritic knee requiring use of a

hinged brace and case . . . going to nonetheless work on his feet 6 of 8 hours per day?" ECF No. 15, PageID.882.

The ALJ found that the objective medical records from December 2015 supported a finding that Meyers suffered from a severe knee impairment as he had "degeneration of the knee including a full thickness delaminating chondral tear along with the weight bearing aspect of the medial femoral condyle, mild osteoarthritis of the medial and patellofemoral joint compartments, and a ganglion cyst." ECF No. 12-2, PageID.77. But despite Meyers' allegations that he was much more limited, the ALJ determined that the "most recent record show[s] that [Meyers'] impairments have not significantly worsened." *Id.*

Citing 2017 medical records, the ALJ noted that Meyers "was not consistently using a cane, he had no numbness, no tingling, his sensation was intact, and despite some joint spacing narrowing noted on imaging, his arthritis was described as 'mild.'" *Id.* The ALJ also stated that the records showed that "clinicians continued to recommend that [Meyers] engage in exercise," that he was not prescribed narcotics or pain medication, that he could ambulate independently, and that he "even admitted that his pain was not chronic." *Id.*

May 2017 medical records show that Meyers had "normal ROM and strength, no joint enlargement or tenderness" in his left lower extremity. ECF No. 12-8, PageID.551. His pulse was "good" in both legs, he was "encouraged in activity modification and daily exercise," and only recommended over-the-counter pain medication. *Id.*, PageID.571. Even after x-rays showed osteoarthritis of the right knee, "[c]onservative treatment options were recommended." *Id.*, PageID.577. In January 2019, Meyers' extremities had "[n]o edema," and it was again "recommended strongly for him to increase his level of activities and do more exercises for multiple reasons." ECF No. 12-9, PageID.680-681.

Meyers has pointed to no evidence that undermines the ALJ's determine or that shows he requires a more restrictive RFC, which is his burden. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

The Court also finds no merit in Meyers' contention about the weight the ALJ gave to his mother's third-party function report. The ALJ found that Meyers' mother was not medically trained or a disinterested third party. ECF No. 12-2, PageID.76. She concluded that the "accuracy of the report is questionable" and "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." *Id*.

Meyers asserts that the form was "filled out by someone who knew him well" and "if being a disinterested party is a requirement, then why did the ALJ have no trouble adopting the findings of non-examining pencil pushers at DDS, who've never met Plaintiff and who are being compensated for their 'assistance.'" ECF No. 15, PageID.881-882.

Under 20 C.F.R. § 404.1513(d)(4), the ALJ need not to consider statements from non-medical sources, including family members and friends. *See Holbrook v. Astrue*, No. CIV.A. 07–78–JBC, 2008 WL 4000423, at *3 (E.D.Ky. Aug. 25, 200 8) ("The regulation clearly states that the ALJ may take non-medical sources into consideration, not that he is required to do so."). And an ALJ's failure to consider lay source evidence cannot be more than harmless error unless it would affect the disability decision and is fully supported by the reports of treating physicians. *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir.2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir.2004). Meyers has failed to show an error that requires remand.

## C.

Meyers' remaining claims lack merit.

He argues that the ALJ erred in not giving controlling weight to the opinion of his "treating physician" Steele. ECF No. 15, PageID.558-887.

13

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.

In a March 2019 Mental Residual Functional Capacity Assessment, Steele said that Meyers had several marked limitations in his ability to sustain concentration and persistence, in social interaction, and in adaption. ECF No. 12-10, PageID.857-858. Steele concluded, "I am hard pressed to imagine a scenario at present that would allow him to work gainfully." *Id.*, PageID.859. The ALJ afforded little weight to Steele's opinion because it was not supported by Meyers' examinations as he was "observed to have intact memory, normal mood and affect, be stable, was cooperative, and displayed periods of logical thought, linear thought, no anxiety, no loss of interest, no memory loss, and paranoia." ECF No. 12-2, PageID.79. The ALJ also noted that Steele was not an acceptable medical source. *Id*.

The ALJ committed no error in giving little weight to Steele's opinion. First, Steele was not a "treating physician," which is defined as "your own physician, psychologist, or other acceptable medical sources who provides

14

you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.502. Acceptable medical sources include licensed doctors and psychologists, but not nurse practitioners, physician assistants, or therapists. 20 C.F.R. § 404.1513(a)(1-4); (d)(1). Even if Steele were an acceptable medical source, the ALJ did not have to give "special significance" to the opinion that Meyers could not work. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("20 C.F.R. § 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the Secretary.").

The Court turns next to Meyer's argument that that the "ALJ failed to explain the basis for not crediting [his] statements regarding the extent, severity and chronicity if his symptoms" under 16-3p. ECF No. 15, PageID.887-888. This argument is not true. The ALJ considered Meyers' subjective complaints and determined that "the substantial evidence of record does not show" that he reported these complaints "regularly and consistently to treating physicians." ECF No. 12-2, PageID.74-79. Besides, the ALJ did not have to discuss every symptom Meyers alleged. *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom is not an error."). And the ALJ did not have to

15

accept Meyers' subjective complaints. Her duty was to evaluate whether the evidence supported the extent of Meyers' alleged limitations. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. For the Court to find reversible error, Meyers would have to sustain his burden of showing that he needed a more restrictive RFC. *Preslar*, 14 F.3d at 1110. He does not sustain this burden.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion, ECF No. 18, be **GRANTED**; that Meyers' motion, ECF No. 15, be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: June 30, 2021 United States Magistrate Judge

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

 The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2021.

           s/Marlena Williams
           MARLENA WILLIAMS
           Case Manager